[Civ. No. 4857. First Appellate District, Division Two.—August 23, 1924.]

R. L. REID, Appellant, v. GEORGE ST. JOHN, Respondent.

[1] TRADE NAMES—SALE OF BUSINESS—RIGHT TO USE NAME.—Section 993 of the Civil Code does not make it necessary for the person selling a business to expressly mention the name under which the business was conducted in order to transfer to the purchaser the right to use such name.

[2] ID.—SALE OF GOODWILL—RIGHT TO USE NAME OF SELLER—PROPER JUDGMENT.—Section 992 of the Civil Code, which provides that the goodwill of a business does not include the right to use the name of "any person" from whom it was acquired, is not violated by a judgment which does not give the purchaser of a business, together with the goodwill thereof, the right to use the name of the seller, but merely the right to use what the court found to have become an impersonal designation which, although embracing the surname of the seller, had become a trade name and which was transferable with the goodwill of the business under the provisions of section 993 of the Civil Code.

[3] ID.—INTENT OF PARTIES—SURROUNDING CIRCUMSTANCES—ARTICLES SOLD—EVIDENCE.—In an action by the seller against the purchaser of a drugstore business, together with the goodwill thereof, to restrain such purchaser from using certain names or designations embracing the surname of the seller, an inquiry into the situation of the parties and of the subject of the instrument of sale is proper in order to determine just what the parties intended to buy and sell in the transaction; and the fact that the articles sold included an electric sign embracing the surname of the seller, a large stock of prepared remedies and drugs bearing labels with inscriptions similar to the name on the electric sign, a large prescription business which the seller had established under such name, and numerous other similar items, clearly indicated that it was the intention of the parties that the sale of such articles and items should carry with it the right to continue to use the designation theretofore used by the seller.

[4] ID.—IMPERSONAL DESIGNATION OF TRADE ARTICLES—FRAUD UPON PURCHASERS—FINDINGS.—In such action, where the trial court found, upon ample evidence, that the names used by defendant had long ceased to have any personal significance, but were used

2. Assignability of trademarks and trade names, notes, 17 Am. St. Rep. 496; 2 Ann. Cas. 218; Ann. Cas. 1917A, 260. See, also, 26 R. C. L. 865; 12 R. C. L. 986.

3. See 6 Cal. Jur. 252, 294; 6 R. C. L. 835, 849.

as impersonal designations of the business and to indicate articles of sale in said business to which they had originally been affixed, and that said names did not cause customers to infer that the plaintiff operated the drugstore or prepared the remedies or prescriptions, and that defendant did not use such names with the intention that customers should so infer, defendant's use of the designations in question for the business he was conducting and the articles he was selling did not constitute a misrepresentation to purchasers; and the trial court properly entered judgment, upon defendant's cross-complaint, protecting him in the use of said names.

(1) 38 Cyc., p. 872.   (2) 38 Cyc., p. 870.   (3) 38 Cyc., pp. 874, 898.   (4) 38 Cyc., p. 747.

APPEAL from a judgment of the Superior Court of Alameda County.   A. F. St. Sure, Judge.   Affirmed.

The facts are stated in the opinion of the court.

John G. Weir and R. C. Young for Appellant.

Clark, Nichols & Eltse for Respondent.

LANGDON, P. J.—This is an appeal by the plaintiff from a decree adjudging defendant to be the owner of the right to use the names of "Reid's Drugs," "Reid's," "Reids Drugs," and "Reid's Drugstore," in connection with the operation of a drugstore business in Berkeley which he purchased from the plaintiff.   The action was brought by the plaintiff seeking an injunction to restrain defendant from using the foregoing designations in connection with his business.   The defendant filed a cross-complaint alleging that the names heretofore referred to had become trade names in connection with said business; that the right to use said names was a part of the business and goodwill of the business sold by the plaintiff to the defendant and asked that he be protected in the use of the same.   Considerable evidence was introduced and some conflicts appear therein, but there is evidence to support the following findings from which the material facts of the case will appear:

That from about May 1, 1915, to January 11, 1918, the plaintiff R. L. Reid did not engage in the drug business alone, but during almost all of said time said R. L. Reid

was associated with H. L. Reid in the carrying on of the drug and pharmacy business; that in so conducting said business said R. L. Reid continuously employed drugstore clerks and other pharmacists to sell drugs and prepare prescriptions; that said business was during said time located in a store at the southeast corner of Durant Avenue and Telegraph Avenue of the city of Berkeley, and was the business sold by said plaintiff to defendant on January 11, 1918, on the occasion referred to in the complaint; that while the words "R. L. Reid, the Druggist," were employed by the said plaintiff in conducting said business from May 1, 1915, to January 11, 1918, the said business had, by the time of the sale to defendant, become widely and generally known and was then widely and generally known by the name of "Reid's Drugs" or "Reids Drugs" or "Reids" or "Reid's Drug Store"; that said names were at the time of said sale in common use and were by the said plaintiff intended to identify and name, and the same did in fact identify and name said drug business; that said four names had become and were largely impersonal and had become and were, in substance, trade names intended by the plaintiff to designate and identify said drug business and drugs, prescriptions, articles, and preparations disposed of in connection with such business, without special reference to the plaintiff or person who might sell the drugs, articles, or preparations, or fill the prescriptions, or make drug preparations for such business, or do other work or things in conducting such business; that said names had by use become the names of articles, drugs, prescriptions, and special preparations of the said store and of the business of said store, and that from the use thereof by defendant, in selling articles, drugs, prescriptions, or special preparations from said store inferences would not be drawn, naturally, that the plaintiff made or prepared or was the seller of said articles, drugs, prescriptions, or special preparations; that said names would merely indicate that the article or business was that to which it was originally affixed. From about May 1, 1915, and at the time of making the sale of said drug business to defendant in January, 1918, plaintiff and his associate and persons employed by plaintiff in conducting said business carried on the correspondence

of said business upon stationery headed "Reids Drugs"; that in conducting said drug business plaintiff and his associate and employees used sale tags or tags for making memoranda of sales, headed "Reids Drugs," and on the back of such tags there was printed "Phone Berk. 1910 or 8835, Reids Drugs, when in need of anything in a hurry"; that in conducting the prescription business, which was a part of said drug business, the plaintiff and those employed by him used, prior to and at the time of the sale to defendant, prescription blanks headed as follows: "Take this to Reid's Drugs, Prescription Specialists, 2324 Telegraph Avenue, Cor. Durant, Berkeley, Cal."; that sheets of paper containing said headings were by plaintiff, his associate, and their employee bound together into small writing pads and distributed among physicians and were by such physicians given to patients and were by such patients taken to said store to be filled; that said printed sheets employed the name of "Reids Drugs" to designate the prescription specialists engaged in preparing prescriptions at said store, without reference to either R. L. Reid or H. L. Reid, or any person engaged in said business; that an important part of said drug business which was sold to defendant was the prescription business connected therewith; that in filling prescriptions it had been the custom of plaintiff and his employees for many years prior to the making of said sale to place upon the containers of the prepared prescriptions labels which bore the number of the prescription filled and which indicated and showed that the same were drugs of that certain business known as and called "Reid's Drugs" and the address of such business was invariably shown upon such labels to be at the corner of Telegraph Avenue and Durant Avenue, Berkeley, California; that the telephone numbers of such business were invariably shown upon such labels to be "Berkeley 1910" and "Berkeley 8835"; that the label that had customarily been used by said R. L. Reid upon the container of the filled prescriptions was "R. L. Reid" or "R. L. Reid, the Druggist," said name being so customarily used by plaintiff while he was running said business alone and prior to the year 1915, the time of his association therein with said H. L. Reid; that said labels last named also showed the location of said store and its said telephone numbers;

that in the business of filling prescriptions in connection with said drug business, it was, prior to the year 1915, the custom for said plaintiff and those associated with him in business to keep a record of the original prescription as filled and delivered in the ordinary transaction of said drug business, and that at the time of the making of said transfer said plaintiff transferred and delivered to defendant the books and records containing all the prescriptions theretofore filled in connection with such drug business; that said prescriptions when received had been numbered and said books and records showed said numbers and that said numbers identified the prescriptions; that it was fully understood and agreed in the making of said transfer that the goodwill of the entire business, including said prescription business, together with all means and facilities for continuing and perpetuating such prescription business, should be transferred to this defendant; that owing to the changes in the addresses of different people who had procured such prescriptions, it is and it will be impossible to keep a record of such addresses; that said persons know the store and the business where said prescriptions were filled by the name of the business shown upon the container of the prescription which they had previously had filled; that the records of said prescriptions had been prepared through and covered a period of ten years or thereabouts; that said prescriptions are often refilled and the refilling of the same is a source of profit; that many of the orders for refilling such prescriptions are received by mail or by telephone; that to enjoy or make use of said prescription business so sold to defendant it was and is necessary for him to use the names by which such business was and is identified, to wit, "Reid's Drugs" or "Reids Drugs" or "Reids Drug Store," although defendant uses in connection with the labels of his prescriptions a statement, "Geo. St. John, prescription druggist." That at the time of the said sale the said drug business included the business of manufacturing special remedies and preparations in accordance with certain formulas prepared or originated by said R. L. Reid and that said remedies and preparations were being sold at said drugstore; that in selling said remedies and preparations printed labels were by plaintiff and his associate and employees placed upon the

containers used in selling said remedies and preparations; that a portion of said labels contained the statement that the article upon which the label was placed was manufactured by "Reid's Drugs, Telegraph and Durant, Berkeley, Cal."; that labels on other of said remedies and preparations contained the statement that they were prepared by "R. L. Reid, the Druggist"; that said labels last mentioned were some that had been printed before said H. L. Reid was associated in said business. That in selling the drugs which were not of his own manufacture the plaintiff R. L. Reid and his associate and employees, with his knowledge and consent, did, prior to and up to the time of the said sale, label many of such drugs with labels bearing the name "Reids Drugs," which labels contained a statement as to the location of the store bearing the said name with its phone numbers as hereinbefore given. That the names of said special remedies and preparations and of said drugs mentioned in the preceding findings were in many instances made up in part of the name "Reids"; that among these were "Reids Violet Witchazel," "Reids Furniture Polish," "Reids Cold Cream," "Reids Violet Toilet Cream," "Reids Borothymol," "Reids Alkasepsis," and other preparations. That in disposing of many of the said special preparations last referred to and others of the same character, it was in many instances, prior to the date of said sale, a practice of the plaintiff to place upon the label of the remedy or preparation sold the name thereof and also a statement or indication that the same was prepared by "Reids Drugs." That at the time of the sale the said plaintiff had on hand in said store large quantities of all the aforesaid remedies and preparations and drugs bottled or otherwise put up in containers and labeled with labels glued to the same, which said containers and labels contained the names thereof and the matters and things hereinbefore referred to; that in and as a part of said transaction of sale all of the said preparations, together with the said labels pasted thereon and said containers, were sold by the plaintiff to the defendant; that such sale was made with the intent that said remedies, preparations, and drugs should be sold at retail by the defendant with the labels thereon and in said containers; that defendant still has on hand large quantities of said remedies,

68 Cal. App.—23

preparations, and drugs contained and labeled as aforesaid; that they are useless except for purposes of sale; that at the time of said sale plaintiff had on hand large numbers of said labels intended for use in the manufacture and sale of said remedies, preparations, and drugs. That a part of the equipment and appliances of said business which said plaintiff sold to this defendant and which were used in connection with said business and which were turned over to and delivered to the defendant by plaintiff on the making of said sale was a copper or brass die suitable for printing "Reids Drugs" on labels, letter-heads, sale tags, blanks, or containers; that the letters of said die were in script of the same style, size, and form as the die or cut theretofore used by plaintiff in running said business; that defendant still has on hand large quantities of said sale tags, prescription blanks, and labels sold to him by the plaintiff; that all of said stationery, all of said sale tags, all of said prescription blanks, and all of said labels and the said die were by the plaintiff sold to the defendant and delivered to defendant as a part of the transaction for the sale of the drugstore; that the same are useless and valueless except by using the same in the manner they have been used.

That a part of the business sold to defendant was the business of making and selling said special remedies and preparations and drugs bearing the names which plaintiff had theretofore given to them; that the plaintiff, in selling to the defendant said drug business, sold to him the formulas and prescriptions whereby all of said special remedies and preparations were made; that the value of the said remedies and preparations was and is in a large part due to the names which the same bear and by which they have been advertised through the labels placed thereon; that all things contained in said names had become and were by the time of said sale to the defendant trade names and constituted a part of the business sold to defendant, that said remedies, preparations, and drugs were manufactured and put up by any of the pharmacist specialists connected with said business during the time plaintiff conducted said business.

That among the things sold to defendant was a large, heavy electric sign, which was made of metal and contained the words "Reid's Drugs"; that said sign was expensive and

was and is valuable and the same cannot be changed either
easily or without incurring considerable expense; that the
letters thereon are raised and are a part of the metal of
which the sign is made; that at the time of said sale said
sign was equipped with an electrical appliance or equipment
for use in making the letters of said words visible by night;
that said equipment was and is a part of said sign; that said
sign was used by plaintiff after he had associated with him
in business said H. L. Reid and said sign was not used by
plaintiff to designate the plaintiff himself, but was a name
which designated said drug business and the location thereof,
without any special reference to the persons owning or en-
gaged in conducting said business; that said sign has been
used by the defendant ever since said sale. That a part of
the price paid by defendant for said business and equip-
ment was paid for said sign and that it was bought and
sold as a thing to be used by defendant. That the defend-
ant is still engaged in using all of said stationery, sale tags,
prescription blanks, labels, names, and the said sign; that
the same are not and never have been used by the defendant
for the purpose of leading customers to believe that the plain-
tiff owns or conducts said business, but solely and only for
the purpose of saving to defendant that which he bought
and paid for in said sale.

That the right to use said names, labels, and the said sign
was a part of the business and goodwill of the business sold
to defendant by the plaintiff; that the defendant is the
owner, and since the date of the sale of said drug business
has been the owner, of the right to use the names herein-
before mentioned in the conduct of said business, and to use
and sell the stock of drugs, remedies, etc., and the stock of
labels sold to him by the plaintiff.

We have set forth the findings thus fully because they
embody substantially the facts pleaded by the defendant in
his cross-complaint upon which the judgment appealed from
was secured, and also embody the facts as disclosed by the
evidence most favorable to the defendant, and they also
answer most of the points made by appellant in his briefs.

In this case, the transfer of the business was made, ad-
mittedly, by an instrument reading, in part, as follows:
"R. L. Reid . . . does by these presents sell unto the party

of the second part . . . his right, title and interest of, in and to all of that certain drugstore business now being conducted under the name of Reid's Drugs . . . together with the goodwill thereof, all the stock of drugs and merchandise now on hand, all appliances and all equipment and fixtures used in connection with said business.''

[1] Appellant contends that section 993 of the Civil Code made it necessary for plaintiff to expressly mention the name under which the business was conducted in order to transfer to defendant the right to use the same. But said section does not so provide. It reads: ''The goodwill of a business is property, transferable like any other, and the person transferring it may transfer with it the right of using the name under which the business is conducted.'' That is precisely what the trial court has found that the plaintiff did— transferred with the goodwill of the business, the right to use the name under which it was conducted, and we think no other fair inference could be drawn from the fact that defendant paid for a large electric sign bearing such name and for labels and containers bearing such name and for drugs and special remedies in packages and containers bearing such name. [2] Section 992 of the Civil Code provides that the goodwill of a business does not include the right to use the name of *any person* from whom it was acquired, but the judgment does not give to defendant such a right, but merely the right to use what was found to have become an impersonal designation which had become a trade name and which was transferable with the goodwill of the business under the provisions of section 993 of the Civil Code. The evidence in the record all tends to show that when the goodwill of the business, the stock of drugs and merchandise and appliances, equipment and fixtures, were sold to defendant, all of which bore the name under which the business was being conducted, it was the intention of the parties that the defendant should have the right to use such name or names in selling such drugs and merchandise and in using the equipment, appliances and fixtures; otherwise all these articles for which he had paid would have been valueless to him. With reference to the plaintiff's name, the judgment merely gives to defendant the right to sell such remedies and preparations as he purchased from plaintiff for the

purposes of sale which happen to bear labels with plaintiff's name thereon.

[3] The inquiry into the situation of the parties and of the subject of the instrument of sale was proper in order to determine just what the parties intended to buy and sell in the transaction. Section 1860 of the Code of Civil Procedure provides: "For the proper construction of an instrument, the circumstances under which it was made, including the situation of the subject of the instrument and of the parties to it, may also be shown." Under this section evidence that a large electric sign bearing the name "Reid's Drugs" was sold to defendant; that a large stock of prepared remedies and drugs bearing glued labels with similar inscriptions was sold to him, obviously, for resale, that a large prescription business was sold to him and that the orders for refilling such prescriptions, naturally, would come to the store under the name designated in the original prescription, and numerous other matters in the record all indicate, we think very clearly, that it was the intention of the parties that the sale of these articles should carry with it the right to use the designation they were carrying, and the trial court has so concluded.

[4] The only other point made by the appellant is that relief should have been denied to the defendant upon the theory that his use of the designations hereinbefore set out for the business he is conducting and the articles he is selling constitutes a misrepresentation to purchasers. This objection is also answered by the findings that the names used by defendant had long ceased to have any personal significance, but were used as impersonal designations of the business and to indicate articles of sale in said business to which they had originally been affixed, and that said names did not cause customers to infer that the plaintiff operated the drugstore or prepared the remedies or prescriptions, and that the defendant does not use such names with the intention that customers shall so infer.

In conclusion, the entire case presents a situation where the plaintiff and defendant are disputing about a single fact—the sale of the right to use the names. There is some conflict in the evidence upon some points, but there is an unusual amount of evidence in support of the conclusion

which the trial court drew from all the facts and circumstances surrouding the parties, their negotiations, and the subject matter of their contract.

The judgment is affirmed.

Sturtevant, J., and Nourse, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 20, 1924.

All the Justices concurred.